IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTINA LATE AND NATHAN ARMOLT AS PARENTS AND NATURAL GUARDIANS OF D.A, A MINOR AND IN THEIR OWN RIGHT: 2310 Adrienne Lane, Apt. 4 Chambersburg, PA 17202, : : : : : : | Civil Action No. |
| Plaintiffs : | |
| v. : | |
| UNITED STATES OF AMERICA, : | |
| Defendant. : : | |

## COMPLAINT

Plaintiffs, Christina Late and Nathan Armolt individually and as parents and legal guardians of D.A., a minor, file this Complaint against United States of America (Defendant.) Plaintiffs allege as follows:

### JURISDICTION AND VENUE

1. This case sounding in medical malpractice involves a claim for personal injury brought against the United States of America under Section (b)(1) of the Federal Tort Claims Act (FTCA), 42 U.S.C. §1346. Jurisdiction is based on 28 U.S.C. §1331 (federal question), 42 U.S.C. §1346, et seq. (FTCA litigation) and 28 U.S.C. §1367 (supplemental jurisdiction.)

2. Venue is proper because the acts and omissions that form the subject matter of this action occurred in this judicial district.

## THE PARTIES

3. Plaintiff, Christina Late, is an individual and adult citizen of the Commonwealth of Pennsylvania and resides at 2310 Adrienne Lane, Apt. 4, Chambersburg, PA 17202, and files this Complaint as parent and legal guardian of the minor D.A. and in her own right.

4. Plaintiff, Nathan Armolt, is an individual and adult citizen of the Commonwealth of Pennsylvania and resides at 2310 Adrienne Lane, Apt. 4, Chambersburg, PA 17202, and files this Complaint as parent and legal guardian of the minor D.A. and in his own right.

5. Plaintiff, minor D. A., was born on February 21, 2012, and resides with his parents at 2310 Adrienne Lane, Apt. 4, Chambersburg, PA 17202.

6. Defendant, United States of America d/b/a Keystone Health Center and Keystone Women's Care is a state-chartered hospital and health care facility. The clinic maintains its principal place of business 755 Norland Avenue, Chambersburg, PA 17201. The clinic is a state agency within in the meaning of 28 U.S.C. §2674. The Clinic includes Dr. Thomas Orndorf as well as other employees, agents, ostensible agents, workmen, and servants. As more fully set forth herein, the claim asserted against this Defendant is for professional negligence of its agents, ostensible agents, servants, and employees. As stated more fully herein, a claim for direct corporate negligence is also asserted against this Defendant.

7. In doing the acts alleged herein, Dr. Orndorf was acting as the actual, apparent and/or ostensible agent and/or employee of Defendant, United States of American d/b/a Keystone Health Center, Keystone Women's Care acting within the course and scope of his agency and/or employment with Defendant, United States of America d/b/a Keystone Health Center and Keystone Women's Care.

8. All physicians, specialists, fellows, residents, nurses, technicians, and/or other

professional and non-professional personnel of Defendant, United States of America d/b/a Keystone Health Center and Keystone Women's Care including but not limited to Dr. Orndorf who was responsible for monitoring, treating, and caring for Christina Late on September 20, 2012 through September 22, 2012 was acting as duly authorized, actual, apparent and/or ostensible agents, servants, and employees of Defendant, United States of America d/b/a Keystone Health Center and Keystone Women's Care and acted within the scope of their employment and/or actual, apparent and/or ostensible agency with Defendant, United States of America d/b/a Keystone Health Center and Keystone Women's Care. The identity of any other individuals involved in Ms. Late's care on September 20, 2012 through September 22, 2012 cannot be ascertained from the medical records, and this information is in the exclusive control and custody of Defendant and will be the subject of on-going discovery.

9. At all times relevant hereto, Christina Late was under the medical care, treatment and attendance of Defendant directly or through its agents, servants and/or employees including ostensible agents identified above and under their direct control or right of control.

10. A Certificate of Merit as to the Defendant is attached hereto as Exhibit A.

## **GENERAL ALLEGATIONS**

11. On or about July 12, 2011, Christina Late was seen at the Keystone Health Center/Keystone Women's Care for evaluation of pregnancy. She was eight weeks pregnant confirmed by ultrasound which provided an estimated date of delivery of February 20, 2012. Ultrasound confirmed a singleton intrauterine pregnancy.

12. Christina Late continued to treat at Keystone Health Center for prenatal care from July 12, 2011 through February 10, 2012.

13. Christina Late's prenatal course was healthy and without complications.

14. On February 20, 2012 Christina, 40 weeks pregnant, reported to Chambersburg Hospital with complaints of contractions every three minutes and leaking fluid. On examination, she was noted to be 3 cm dilated, 70% effaced and a -2 vertex station. She was grossly ruptured for clear fluid for a spontaneous rupture of membranes. She was admitted for a vaginal delivery.

15. Christina's labor progressed without incident. At or around 2345 she received an epidural.

16. At 0016 on February 21, 2012 she was noted to be 6 cm dilated, 90% effaced and at -1 station.

17. At 0354 she was noted to be 7 cm dilated, 80% effaced and at -1 station.

18. At 0531 she was noted to be 8cm dilated 90% effaced and at -1 station.

19. Throughout the overnight hours Christina's labor was monitored exclusively by nurses including Nurse Jennifer Irvin and Nurse Kristie Brenize.

20. At 0556 she was noted by Nurse Irvin to be 9 cm dilated 100% effaced and at -1 station. She received 5 mg of Ephedrine per Nurse Irvin.

21. Christina continued to labor with Nurse Irvin in attendance.

22. At 0635 Nurse Irvin updated Dr. Ginter as to Christina's status.

23. At or around 7:00 a.m. the nurses' shift change occurred and Christina's labor was attended to by Nurse Christina Florentine.

24. At 0721 Nurse Florentine noted 100 cc of emesis.

25. At 0723 Nurse Florentine provided Dr. Orndorf an update on Christina's labor. This is the first information Dr. Thomas Orndorf had received on Christina and her labor.

26. Dr. Orndorf is the Director of Obstetrics for Keystone Women's Care.

27. At or around 0730 Nurse Florentine noted that Christina was 10 cm dilated.

28. At or around 0730 Dr. Orndorf was at the bedside, Chistina was fully dilated, +1 station and pushing.

29. The fetal heart tracing showed some mild decelerations with good recovery and quick return to baseline.

30. At or around 0739 despite only eight minutes of pushing and the high position of the baby, Dr. Orndorf applied forceps for delivery and applied traction to the forceps.

31. This attempt at a forceps delivery was unsuccessful.

32. At or around 0742 Nurse Dawn Osterling noted that Dr. Orndorf removed the forceps.

33. Christina continued pushing. At or around 0744, Dr. Orndorf reapplied the forceps without clear indication for them, improperly placed them on the baby's head, and applied excessive traction. For the next six minutes Dr. Orndorf crushed the baby's skull and compressed the ventricles of his brain.

34. Baby boy D.A. was delivered via forceps at 0748.

35. Dr. Orndorf applied excessive force and traction and misapplied the forceps on the baby's skull and performed a mid forceps delivery causing severe injury to the baby, D.A..

36. Immediately after delivery, the infant was noted to have mild respiratory distress with some tachypnea and occasional grunting.

37. At or around 11:00 p.m. Dylan was noted to have recurrence of his tachypnea with grunting and jaundice. CBC, blood culture and venous bilirubin were obtained. CBC was elevated at 29,000, platelets were decreased at 83,000 and bilirubin was elevated at 10.6. Subsequently, Dylan developed hypoxia with oxygen saturation in the high 80s.

38. Dylan was noted to have some occipital bogginess at around 15 hours of life.

This persisted in to the next morning and the decision was made to proceed with a head CT scan.

39.     The head CT had multiple findings including two skull fractures, one of which was displaced, a left cerebellar contusion, fourth ventricular compression, and early lateral ventricular hydrocephalus.

40.     Dylan was transferred to Hershey Medical Center for concerns of multiple intracranial findings that were worrisome for impending hydrocephalus.

41.     Dylan was admitted to Hershey Medical Center's NICU for 17 days. He presented to Hershey Medical Center with skull fractures and left cerebellar bleed with fourth ventricular compression and early ventriculomegaly of the lateral ventricles.

42.     Dylan was noted to be anemic, thrombocytopenic and coagulopathic on admission and received PRBC, Platelets, Cryo and FFP. He was diagnosed with cerebellar hemorrhage, post hemorrhagic hydrocephalus and seizures.

43.     CT scans done while at Hershey Medical Center showed interval worsening hydrocephalus and he was taken to the OR for reservoir placement. Thereafter he suffered multiple seizures and the reservoir was tapped on a daily basis for initial four days after reservoir placement.

44.     Immediately following his delivery and continuing thereafter to the present, D.A. experienced and continues to suffer catastrophic and permanent neurological impairment and deficits including _inter alia_, severe brain injury, permanent sensory deficits, pervasive global developmental delay, inability to walk without assistance, inability to speak, persistent pain and discomfort, visual field impairment, functional limitations, permanent disability and seizures.

45.     D.A. will require assistance with most aspects of daily living and will not be able to care for himself and will remain dependent on others for the remainder of his life.

46. Plaintiff minor D.A. experienced catastrophic neurological injury, including <u>inter alia</u>, permanent traumatic brain injury and permanent and severe pain and suffering, central nervous system injury, multiple skull fractures, left cerebellar bleed with fourth ventricular compression, ventriculomegaly of the lateral ventricles, stridor, anemia, thrombocytopenia, coagulopathy, cerebellar hemorrhage and post hemorrhagaic hydrocephalus.

47. Plaintiffs seek the full measure of economic and noneconomic damages in their own right and on behalf of their minor child, under Pennsylvania law including without limitation, pain and suffering, past and future medical expenses, disfigurement, humiliation, emotional distress, loss of future economic horizons, and loss of enjoyment of life and life's pleasures. Plaintiff minor's permanent catastrophic injuries are due to the negligence of the Defendant, and not any action or failure to act by Plaintiffs.

### COUNT I – NEGLIGENCE
### PLAINTIFFS V. DEFENDANT,
### UNITED STATES OF AMERICA D/B/A KEYSTONE HEALTH CENTER/ KEYSTONE WOMEN'S CARE/ DR. THOMAS ORNDORF

48. The preceding paragraphs are incorporated by reference as though fully set forth herein.

49. The negligence of Defendant, United States of America d/b/a Keystone Health Center/Keystone Women's Care by and through its employees, servants, agents, apparent agents, ostensible agents and/or workmen, including specifically Dr. Thomas Orndorf includes the following:

    a. Failing to properly and adequately evaluate and monitor Christina Late and D.A. given the circumstances described above;

    b. Failure to promptly and timely monitor the labor curve of Christina Late;

    c. Failing to allow Christina Late to continue to labor at or around 0739;

d. Failing to follow appropriate procedures, guidelines and protocols for indications for forceps use;

e. Failing to follow appropriate procedures guidelines and protocols for application of forceps;

f. Failing to follow appropriate procedures and guidelines and protocols for amount of traction to be used when applying and pulling on forceps;

g. Negligently diagnosing arrest of descent when none was present;

h. Negligently placing forceps at +1 station;

i. Negligently placing forceps relative to the position of the baby's head;

j. Negligently applying forceps with excessive pressure;

k. Negligently applying excessive traction and pressure causing the forceps to crush the baby's skull;

l. Negligently applying forceps such that they caused irreparable harm to the infant D.A.;

m. Failure to promptly and timely deliver Christina Late's baby D.A. via non operative delivery;

n. Failure to promptly and timely deliver Christina Late's baby D.A. via c-section following the initial failed forceps application;

o. Failure to ensure that appropriate and trained personnel were on hand to care for D.A. at the time of his birth;

p. Failure to ensure the NICU personnel notified and present at the time of D.A.'s birth;

q. Failure to recognize the signs and symptoms of intra cranial hemorrhage, intra cranial bleed and ventricular compression and skull fractures in the infant D.A.;

r. Failing to keep apprised and be aware of the condition of Christina Late during her labor;

s. Failing to intervene in a timely manner;

t. Failing to take all appropriate steps so as not to increase the risk of injury and harm to Christina Late and D.A.;

u. Failing to adhere to hospital practices, policies and procedures to ensure that the forceps application would be appropriate and traction used appropriate to prevent injury to the infant, D.A.;

v. Failing to comply with the accepted standards of care in the decision to implement forceps, the application of the forceps and the use of excessive traction of the forceps in delivering the fetal head;

50. The negligence of the defendant by and through its aforementioned agents, servants, workmen, and/or employees as set forth above caused the injuries and damages suffered by minor Plaintiff D.A. and his parents Christina Late and Nathan Armolt.

51. The injuries to minor Plaintiff D.A. and his parents Christina Late and Nathan Armolt were caused solely by the negligence of the Defendant as set forth above and were not caused or contributed there to by any negligence on the part of D.A. or his parents Christina Late and Nathan Armolt.

52. The negligence of Defendant directly and proximately caused the injuries to D.A. and his parents Christina Late and Nathan Armolt.

WHEREFORE, Plaintiffs, Christina Late and Nathan Armolt individually and as parents and legal guardians of D.A., respectfully demands damages against Defendant individually, jointly and severally, for sums in excess of local arbitration limits in excess of $100,000.00, exclusive of interest, prejudgment interest, and costs.

Respectfully submitted,

KLINE & SPECTER
*A Professional Corporation*

By: _____
SHANIN SPECTER, ESQUIRE
PA 40928
Shanin.Specter@KlineSpecer.com


_____
REGAN S. SAFIER, ESQUIRE
PA 79919
Regan.Safier@KlineSpecter.com

Attorneys for Plaintiffs
1525 Locust Street, 19th Floor
Philadelphia, PA 19102
(215) 772-1000
(215) 735-5827 (Fax)

Dated: 3/22/13