IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTINA LATE AND NATHAN ARMOLT, AS PARENTS AND NATURAL GUARDIANS OF D.A., A MINOR AND IN THEIR OWN RIGHT,** | : Civil No. 1:13-CV-0756 |
| **Plaintiffs,** | : |
| v. | : |
| **UNITED STATES OF AMERICA** | : |
| **Defendant** | : Judge Sylvia H. Rambo |

# **M E M O R A N D U M**

In this medical malpractice action brought by the minor child's parents against the United States pursuant to the Federal Tort Claims Act ("FTCA"), the United States has moved to limit Plaintiffs' future medical expenses claim to no more than $100,000.00, or alternatively, to be treated like a private litigant under Pennsylvania law. (Doc. 62.) The principle issue raised herein is whether this court has jurisdiction to order the United States to provide funding for the periodic payments of a future medical expenses award in excess of $100,000.00 "by means of an annuity contract, trust, or other qualified funding plan," as mandated by Pennsylvania's periodic payment statute. *See* 40 P.S. § 1303.509(b)(6). For the following reasons, the court holds that it may order the parties to place an award into an annuity contract, trust, or other qualified funding plan. Accordingly, the court will grant the motion to the extent the United States seeks to be treated like a private litigant under Pennsylvania law and deny the motion to the extent the United States seeks to limit Plaintiffs' future medical expenses claim to no more than $100,000.00.

**I.       Background**

Plaintiffs, Christina Late and Nathan Armolt, filed this action on behalf of their minor son, D.A., alleging that he suffers from severe and permanent physical and neurological injuries as a result of negligent obstetrical care rendered by Dr. Thomas Orndorf on February 21, 2012, at Chambersburg Hospital, a federally supported hospital located within the Middle District of Pennsylvania.  (Doc. 1.)  Plaintiffs seek, *inter alia*, future medical expenses in excess of $15,000,000.00.  (Doc. 62, p. 8 of 26.)

This matter was initially scheduled for trial on September 15, 2014.  However, on August 29, 2014, the parties filed a joint motion to continue trial, namely on the basis that D.A.'s potential future medical expenses are highly contested due to the difficulty in ascertaining the full extent of brain injury in a child under the age of four.  (Doc. 52.)  The parties represented that a continuance of two years would provide D.A. with the opportunity to receive additional medical care and participate in physical, occupational, and speech therapy, and that his progress, or lack thereof, would place the medical experts and treating physicians in a better position to opine as to his prognoses and future care needs.  (*Id.*)  The court granted the motion on September 8, 2014.  (Doc. 53.)

On November, 24, 2014, the United States filed the instant motion and supporting brief seeking to limit Plaintiffs' future medical expenses claim to no more than $100,000.00 or, alternatively, to treat the United States like a private litigant under Pennsylvania law (Docs. 61 & 62), to which Plaintiffs responded on December 29, 2014 (Doc. 65).  The United States replied on January 12, 2015.  (Doc. 66.)  Thus, the matter is ripe for disposition.

## II.     <u>Legal Standard</u>

The United States has brought the instant motion pursuant to Federal Rule of Procedure 12(b)(1), which allows a court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The motion amounts to a factual attack on the court's jurisdiction because it challenges not merely an alleged pleading deficiency, but rather the actual failure of Plaintiffs' future damages claim to comport with the jurisdictional prerequisites of the FTCA. *United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). As such, no presumptive truthfulness attaches to the allegations in the complaint, and the court may consider and weigh evidence outside the pleadings to determine if it has jurisdiction. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000)*; Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## III.     <u>Discussion</u>

The FTCA waives the federal government's sovereign immunity in tort actions and makes the United States liable "in the same manner and to the same extent as a private individual under like circumstances," depending upon the law of the state where the tort occurred. 28 U.S.C. § 2674; *Cibula v. United States*, 664 F.3d 428, 430 (4th Cir. 2012) (citing 28 U.S.C. § 1346(b)(1)) (stating that courts determine the United States's liability "in accordance with the law of the place where the [negligent] act or omission occurred"). Pennsylvania law controls the manner and extent of the United States's liability in this case.

The Pennsylvania Medical Care Availability and Reduction of Error Act ("MCARE Act") provides a comprehensive scheme for the method by which a

judgment for future medical expenses must be satisfied in medical malpractice actions. As is relevant to the present case, the MCARE Act provides that a judgment for future medical and other related expenses in excess of $100,000.00 "shall be paid as periodic payments." 40 P.S. § 1303.509(b)(1). The trier of fact is required to make a specific finding as to the amount of future damages "by year," *id.* at § 1303.509(a)(2)(i), and "may vary the amount . . . from year to year for the expected life of the claimant to account for different annual expenditure requirements," *id.* at § 1303.509(b)(1). The trier of fact may also "incorporate into any future medical expense award adjustments to account for reasonably anticipated inflation and medical care improvements." *Id.* at § 1303.509(b)(2). The future damages must then "be paid in the years that the trier of fact finds they will accrue." *Id.* at § 1303.509(b)(3). The statute further provides that "[e]ach party liable for all or a portion of the judgment shall provide funding for the awarded periodic payments . . . by means of an annuity contract, trust[,] or other qualified funding plan which is approved by the court." *Id.* at § 1303.509(b)(6). Upon the death of the claimant, the periodic payments terminate for all medical expenses not yet due. *Id.* at § 1303.509(b)(5).

Pursuant to the "like circumstances" requirement of the FTCA, *see* 28 U.S.C. § 2674, it would appear that, under Pennsylvania law, the United States should provide funding for periodic payments of a future medical expenses award in excess of $100,000.00 by means of an annuity contract, trust, or other qualified funding plan. However, relying almost exclusively on *Frankel v. Heym*, 466 F.2d 1226 (3d Cir. 1982), the United States argues that the court is precluded from imposing future medical damages against the United States in any form except a

lump-sum money judgment and, therefore, the court would exceed its jurisdiction if it ordered the United States to comply with Pennsylvania's periodic payment scheme. The United States contends that the court must instead limit Plaintiffs' claims for future medical damages to the statute's $100,000.00 threshold for lump-sum payments. *See* 40 P.S. § 1303.509(b)(8) (stating that future damages for medical expenses will not be awarded in periodic payments "if the claimant objects and stipulates that the total amount [of the award], without reduction to present value, does not exceed $100,000."). The United States's argument is unavailing. Even assuming that funding the periodic payments by an annuity contract, trust, or other qualified funding plan involves something other than a lump-sum payment, the court finds that it is authorized to craft a judgment in excess of $100,000.00 against the United States in order to comply with the MCARE Act.

In *Frankel*, the Third Circuit denied the United States's proposal to have an award for future medical damages take the form of a reversionary trust for the benefit of the permanently disabled plaintiff. *Frankel*, 466 F.2d at 1228. Under the trust agreement, the United States would have been required to supplement the trust as needed throughout the plaintiff's life, and any trust funds remaining at the time of the plaintiff's death would revert to the United States. *Id.* After examining the relevant jurisdictional statute for suits brought under the FTCA, which, among other things, "authorizes district courts to entertain 'civil actions on claims against the United States, *for money damages*,"[1] *see* 28 U.S.C. § 1346 (emphasis supplied), the

---

[1] The statute provides, in pertinent part, as follows:

[D]istrict courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property,
(continued...)

Third Circuit concluded that "district court[s] should not make other than lump-sum money judgments" in FTCA cases. *Frankel*, 466 F.2d at 1228-29. The court reasoned that the federal waiver of sovereign immunity incorporates the traditional common law rule that damages must be awarded in lump-sum judgments, and that lump-sum money judgments are preferable to judgments that would impose a continuing burden upon the judiciary to supervise the award. *Id.* The court added that, "[i]f novel awards are to be permitted against the government, Congress should affirmatively authorize them." *Id.* at 1229.

Although the Third Circuit's decision in *Frankel* may initially appear to foreclose the application of Pennsylvania's periodic payment scheme to the United States, *Frankel* is distinguishable from the matter *sub judice*. Unlike the proposed reversionary trust in *Frankel*, Pennsylvania's periodic payment scheme would not subject the United States to ongoing obligations in violation of the FTCA. *See, e.g.*, *Lee v. United States*, 765 F.3d 521, 529 (5th Cir. 2014) ("[A]wards constituting continuing obligations on the United States are not appropriate under the FTCA."); *Hull v. United States*, 971 F.2d 1499, 1505 (10th Cir. 1992) ("[C]ourts cannot subject the government to ongoing obligations like the continuing payments proposed in *Frankel*."). To the contrary, the MCARE Act requires the trier of fact to determine the specific dollar amount due for each year future medical expenses are

---

¹(...continued)
or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346.

awarded. Thereafter, the sum total of the future damages award is calculated from the annual allocations, and the liable party must provide funding for the awarded payments by means of an annuity contract, trust, or other qualified funding plan. Because the total amount of the future payments is known, the liable party's obligation ceases when it pays an immediate lump-sum to fund the future periodic payments. Such a scheme thereby complies with the FTCA and alleviates any concern for imposing an administrative burden on the court.

Moreover, the Third Circuit's decision in *Frankel* preceded Pennsylvania's passage of the MCARE Act and, therefore, there was no authority mandating that the award be structured as the United States requested. As it stands today, however, the MCARE Act mandates that future medical expenses must be paid periodically in Pennsylvania. *See* 40 P.S. § 1303.509 ("[F]uture damages for medical and other related expenses *shall* be paid as periodic payments." (emphasis supplied)). Thus, *Frankel*'s holding is at odds with the FTCA's requirement that the United States be treated like a private defendant under the law of the state where the tort occurred.

When presented with statutes similar to Pennsylvania's periodic payment scheme, other circuits have unanimously held that the FTCA permits district courts to craft awards to comply with state periodic payment statutes provided that the United States satisfies its obligation in one lump-sum. *See Lee v. United States*, 765 F.3d 521 (5th Cir. 2014); *Cibula v. United States*, 664 F.3d 428 (4th Cir. 2012); *Dutra v. United States*, 478 F.3d 1090 (9th Cir. 2007); *Hill v. United States*, 81 F.3d 118 (10th Cir. 1996). For instance, in *Lee*, the Fifth Circuit reversed the district court's decision not to apply the Texas periodic payment scheme to an

award for future medical damages against the United States. *Lee*, 765 F.3d at 526. The Texas statute at issue provided that, "[a]t the request of a defendant physician or health care provider or claimant, the court shall order that" medical damages "be paid in whole or in part in periodic payments rather than by a lump-sum payment." *Id.* at 524 (citing Tex. Civ. Prac. & Rem. Code § 74.503(a)). In an award issued pursuant to that statute, the district court is required to "make a specific finding" as to, *inter alia*, the dollar amount of each periodic payment to satisfy the judgment, *id.* at 524, 529 (citing Tex. Civ. Prac. & Rem. Code § 74.503(c), (d)), and the defendant is required to fund the payments by an annuity contract, bond, treasury note, insurance contract, or other satisfactory form of funding approved by the court, *see* Tex. Civ. Prac. & Rem. Code § 74.505. Upon the death of the payee, the periodic payments terminate for all damages aside from loss of earnings and "any security given reverts to the defendant." *Lee*, 765 F.3d at 524-25 (citing Tex. Civ. Prac. & Rem. Code § 74.506(b), (d)).

    After examining the statute, the Fifth Circuit held that the district court should have structured the damage award in a manner resembling the Texas periodic payment scheme. *Id.* at 527. In distinguishing *Vanhoy v. United States*, 514 F.3d 447 (5th Cir. 2008), a case wherein the Fifth Circuit had denied the United States's request to impose a reversionary trust for which the plaintiff's future medical care needs would be distributed *as needed*, the court focused on the ability of the court to order the United States to make a lump sum payment to fund the award. *Lee*, 765 F.3d at 528 (citing *Vanhoy*, 514 F.3d at 451). The *Lee* Court approved of the Texas scheme because it did not require the United States to incur continuing obligations.

Similarly, in *Cibula*, the Fourth Circuit held that the district court erred by failing to fashion a reversionary trust that would approximate California's periodic payment scheme. *Cibula*, 664 F.3d at 433. Under California law, a private defendant in a medical malpractice action may elect to pay out a future medical damages award periodically rather than in an immediate lump-sum. *Id.* at 432-33 (citing Cal. Civ. Proc. Code. § 667.7). Recognizing that the FTCA prohibits ongoing obligations against the United States, both parties urged the district court to fashion a reversionary trust that, in their respective views, would approximate the periodic payments contemplated by the California statute. *Id.* at 433-34. The United States proposed funding the corpus of the trust with the present value of the future care award, while the plaintiffs argued that the corpus of the trust must consist of the gross future care costs. *Id.* at 434. The Fourth Circuit sided with the United States, concluding that the United States's retention of a reversionary interest in the present value judgment sufficiently approximated the California statute. *Id.* at 435.

The Ninth and Tenth Circuits have also approved the funding of periodic payments for future medical expenses in FTCA actions. In *Dutra*, the plaintiffs argued that state law was incompatible with federal law because the FTCA prohibits the United States from making periodic payments. The relevant Washington statute required the court, at the request of a party, to enter a judgment that provides for the periodic payment of future economic damages as determined by the court. *Id.* at 1091. The court rejected the plaintiffs' argument, explaining that "nothing in the FTCA prevents district courts from ordering the United States to provide periodic payments in the form of a reversionary trust" in order to "approximate the results contemplated by state statutes." *Dutra*, 478 F.3d at 1092.

Likewise, in *Hill*, the United States argued that the district court should have placed the plaintiff's future damages in a reversionary trust. *Hill*, 81 F.3d at 120. Under Colorado law, the trier of fact was required to make a lump-sum award in favor of the victim, which sum is then paid out in equal installments until the time of the victim's death. *Id.*; *see Vanhoy*, 514 F.3d at 453 n.28 (distinguishing Colorado and Louisiana statutes). The Tenth Circuit held that, although the United States "may not be ordered to make periodic payments in the manner in which the [statute] provides," the United States is entitled to a reversionary trust for future medical expenses similar to that envisioned under the statute. *Id.*; *see also Hull*, 971 F.2d at 1505 (holding that district courts have the "inherent authority to structure awards or to impose trusts or reverter conditions to ensure that the damage recovery is in the best interest of the victim" so long as the United States's obligation ceases when it pays a fixed lump-sum to fund the trust).

Upon consideration of the foregoing, the court rejects the United States's argument that Pennsylvania's periodic payment scheme contemplated by the MCARE Act is incompatible with the FTCA and that the court must therefore limit Plaintiff's future medical expenses to $100,000.00. In all of the above-cited cases, the courts sought to treat the United States "in the same manner and to the same extent as a private individual" under the law of the state. *See* 28 U.S.C. § 2674. Consequently, the effect of the decisions was to place the United States and the tort victim in exactly the same position that would have resulted had the victim been injured by any other similarly situated tortfeasor. None of these cases—including *Frankel*—offers support for the proposition that the United States should benefit from an inequitable application of a mandatory state statute at the expense of the tort

victim insofar as it would limit a claim for future damages to $100,000.00. Such a result is clearly not contemplated by the MCARE Act and would not result in "like treatment under like circumstances" as mandated by the FTCA. *See Hill*, 81 F.3d at 121. The United States's argument that Congress must expressly provide for a periodic payment structure also fails to appreciate the FTCA's like circumstances requirement. *See Lee*, 765 F.3d at 529.

Provided that the United States satisfies its obligation in a lump-sum, the court concludes that it is not prohibited from ordering the United States to provide funding for periodic payments of future medical damages by means of an annuity contract, trust, or other qualified funding plan in compliance with Pennsylvania's periodic payment scheme. Assuming, *arguendo,* that D.A.'s future medical damages exceed $100,000.00, the court will craft a judgment in compliance with the MCARE Act in a manner that is consistent with the FTCA's requirement that the United States not be subjected to ongoing obligations. An annuity coupled with a reversionary trust, as proposed by the United States, is one possible mechanism to effectuate the periodic payments, but it is not the exclusive mechanism. A hearing will be held following any award of future medical care to provide a basis for the court to determine the appropriate type of funding plan and method of administration.

**IV.      Conclusion**

Because the MCARE Act does not require the liable party to make payments to the plaintiff on an as-incurred basis, the court finds that it is not prohibited from ordering the United States to make a one-time payment to provide funding for the periodic payment of a future medical expenses award by means of an annuity contract, trust, or other qualified funding plan in accordance with Pennsylvania law.  Thus, the motion is granted to the extent the United States seeks to have the court treat it like a private litigant under Pennsylvania law.  The motion is denied to the extent it seeks to have Plaintiffs' future medical expense claim limited to no more than $100,000.00.

In the event that this court awards damages to Plaintiffs for future medical damages in excess of $100,00.00, a hearing will be held prior to the entry of judgment to determine the appropriate means for satisfying the award in compliance with both the FTCA and the MCARE Act.

An appropriate order will issue.

                                                        s/Sylvia H. Rambo
                                                        United States District Judge

Dated:  March 3, 2015.